## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No.: 17-00354-GMS |
| | ) |
| DEVILBISS LANDSCAPE ARCHITECTS, INC. a corporation, d/b/a DEVILBISS LANDSCAPE ARCHITECTS; and PAUL DEVILBISS. | ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

## SECRETARY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDEANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment

("Defendants' Motion") should be denied because the Complaint alleges clear and

straightforward  violations of the Fair Labor Standards Act by the defendants.  Employees of

DeVilbiss Landscape Architects, Inc. ("DeVilbiss") typically worked between sixty to eighty

hours per week and were paid the straight-time regular rate for all hours worked.  Pursuant to the

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), these employees are owed, but

never received, an overtime premium for all hours worked over forty in a work week.  The

Complaint also alleges that the employees do not fall within the narrow FLSA agricultural work

exemption because they performed substantial non-exempt work when they handled

nonagricultural landscaping materials, as well as plants and trees that were not grown by

Defendants.

Summary judgment is also inappropriate, especially at this early stage.[1]  Even if this Court considers Defendants' Motion for Summary Judgment, it must be denied because there are, at a minimum, disputed facts about the defense raised by Defendants.  That defense -- the agricultural exemption -- provides an exemption to overtime requirements only for employees who exclusively perform agricultural work; therefore, application of this exemption requires consideration of the work performed by employees.  Defendants offer a single declaration which states a legal conclusion that employees are exempt.  Plaintiff's allegations are to the contrary and, in an abundance of caution, Plaintiff attaches supplemental material supporting these allegations.

## I.      Statement of Facts

The Complaint alleges that during the time period from at least April 18, 2014, through at least April 15, 2016, DeVilbiss employed workers ("DeVilbiss employees") at their retail and wholesale nursery operation.  D.I. 1, ¶ 6, Complaint.  DeVilbiss employees routinely worked

---

[1] Defendants move for Summary Judgment under Rule 12(d) which permits a court to convert a Rule 12(b)(6) Motion to Dismiss to a Motion for  Summary Judgment provided that the court provides notice of its intent to do so.  Rule 12(d) does not, on its face, permit a party to intentionally convert its own motion to one for summary judgment.  Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  The Third Circuit requires that the non-moving party be given notice of the Court's intent to convert a motion and consider matters outside the pleadings in deciding a motion pursuant to Rule 12.  *See Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989) (requiring a court to provide notice of its intention to convert a motion to dismiss to one for summary judgment and to allow the parties an opportunity to submit materials admissible in a summary judgment proceeding).  Here, it is not clear that Defendants' filing is intended to be a full Rule 56 Motion, and the Court has not provided notice of an intent to convert it to one.  The Court should not, therefore, consider Defendants' Motion for Summary Judgment nor any materials outside the pleadings.  If this Court does consider this Motion as one properly filed for Summary Judgment and considers the evidence presented by Defendants, Plaintiff requests notice of this consideration and, if necessary, the opportunity to supplement the record with additional evidence of disputed facts.

approximately 60 to 80 hours per week, but were not paid the required overtime premium for hours worked in excess of forty. *Id.* DeVilbiss employees engaged in nonagricultural work when they routinely handled landscaping materials including but not limited to mulch, bricks, pavers, and gravel. *Id.* As further alleged in the Compliant, employees engaged in nonagricultural work when they handled plants and trees that were not grown by DeVilbiss. *Id.* The information contained in the Complaint sufficiently alleges that employees earned overtime premiums that were not paid. The Complaint also sufficiently alleges that Defendants did not properly record the wages earned, including overtime premiums, by DeVilbiss employees. *Id.* at ¶ 7.

While Defendants' "alternative motion for summary judgment" is premature, Plaintiff nevertheless  attaches additional evidence establishing that there are, at a minimum, disputed facts concerning the applicability of the agricultural exemption.

The entire DeVilbiss workforce consists of Paul DeVilbiss, foreman Michael Cahill, and approximately eight employees. *See* D.I. 8-1, Declaration of Paul DeVilbiss, Ex. B (Payroll Records). Defendant Paul DeVilbiss, the owner of DeVilbiss, acknowledges that DeVilbiss is a landscape architectural firm who claims more than 50 % of its business is derived from landscape design services performed by Paul DeVilbiss.   Ex. A, Declaration of Wage and Hour Investigator Rowena Luk, ¶ 5. Paul DeVilbiss also claims another ten percent of DeVilbiss's sales is derived from the wholesale sale of mulch to landscapers. *Id.* The DeVilbiss property is about 4 acres in size, with only one acre dedicated to plants. *Id*. at ¶ 6. The remaining property contains piles of hardscape materials such as gravel, pavers, bricks, and mulch (herein after "hardscape materials"). *Id.* at ¶¶ 9, 10. Foreman Michael Cahill, described the business as doing "wholesale." He stated,

3

> Our customers are contractors around here to do landscape develop[ment].  We do wholesale.  We sell mulch and gravel[].  We buy them from other suppliers and sell them to our customers.  All the guys are able to operate the skid loaders to load them onto the customer's truck.

*Id.* at ¶ 7.

The hardscape materials are used in DeVilbiss's designs and DeVilbiss employees routinely load and unload hardscape materials from trucks.  *Id*. at ¶ 11. [2]  When doing so, the employees use a "skid loader" that all DeVilbiss employees are trained to use.  *Id.* at ¶¶ 7, 11.  The employees also use the skid loader to move mulch.  *Id.* at 11.  Thus, these materials are not used in DeVilbiss farming operations or in connection with DeVilbiss's own growing of plants; rather, they are simply resold.

DeVilbiss does not grow its stock from seed, rather it obtains plants and trees for its wholesale nursery operation from other growers.  New plants are delivered to the DeVilbiss property about once a week.  *Id*. at ¶ 12.  In addition to those plants, DeVilbiss Foreman Michael Cahill buys more plants from Lowes or Home Depot about twice a week.  *Id.* at ¶ 13.  When Foreman Cahill purchases plants from a local retail store, he will sometimes bring DeVilbiss employees to the store to help load these plants.  *Id.*

DeVilbiss does not grow the majority of the plants that it handles.  Instead, the plants that are either delivered or bought locally are cared for by DeVilbiss employees for approximately one to two weeks.  *Id.* at ¶ 14.  Within the one to two week window, these plants will be sold to landscapers who use them in implementing landscaping designs created by Paul DeVilbiss.  Although most plants are sold in this short time frame, a small minority of trees may be kept on

---

[2] Statements made by DeVilbiss employees about the nature of their job are "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" and, therefore, not hearsay.  Fed. R. Civ. P. 801(d)(2)(d).

the property for up to a year.  *Id.*   Although some plants and trees were placed in the ground, the majority of plants still retained burlap  or plastic potting around the roots to permit easy removal. *Id.* at 15.

## II.      Argument

Defendants' Motion to Dismiss should be denied because the Complaint states a claim for relief:  it alleges overtime that was worked and not paid in accordance with the FLSA. Defendants move to dismiss the Complaint because they claim their employees are exempt from the FLSA and that the Complaint does not sufficiently prove that this exemption does not apply. This argument is flawed for two reasons.  First, the burden of proving an affirmative defense to the FLSA rests with the Defendants and Rule 8(a)(2) does not require Plaintiff to plead any facts related to Defendants' potential defenses.  Second, contrary to Defendants' argument, the facts alleged in the Complaint wholly support Plaintiff's assertions that these employees are non-exempt.  The Complaint describes employees performing non-exempt work when they handle hardscape materials and plants and trees grown by other growers; participation in these non-exempt activities renders these employees non-exempt.

Defendants contend their employees are engaged exclusively in agriculture, but the Complaint alleges that portions of each workweek involve nonagricultural activity such as handling hardscape materials for retail purposes or handling agricultural products of another grower.  Defendants' argument for dismissing the record-keeping violations relies on the same affirmative defense.  Although Defendants maintained a record of wages paid, the Complaint alleges that Defendants failed to comply with Sections 11 and 15 of the FLSA by failing to segregate hours on their payroll and inaccurately reporting overtime wages due as zero.  Because

the agricultural exemption is the basis of Defendants' argument that its records are sufficient, the record-keeping violation is inextricable from the substantive back wage issue.

This Court should not consider Defendants' Motion as a Motion for Summary Judgment because it is premature at this stage of the case and the Court has not provided the required notice of its intent to convert the Motion to Dismiss to a Motion for Summary Judgment. If this Court intends to consider the extraneous materials, Plaintiff should be provided notice and given an opportunity to fully respond to the Motion for Summary Judgment. But even if this Court considers Defendants' Motion as one for Summary Judgment, the Motion must still be denied because there are disputed facts regarding Defendants' affirmative defense to the FLSA. Defendants' admissions contradict the DeVilbiss declaration and establish that employees engaged in nonagricultural work when they loaded and unloaded customers' trucks with gravel and mulch. These admissions alone create a factual dispute regarding the DeVilbiss employees' job duties that renders Summary Judgment inappropriate. However, in addition to these admissions, DeVilbiss employees also describe handling other growers' product. This defeats the exemption because, contrary to Defendants' argument, DeVilbiss employees describe routinely selling these plants shortly after DeVilbiss acquires them and before they have sufficiently matured in DeVilbiss's care such that they can be classified as DeVilbiss's horticultural product.

**A. Defendants' Motion to Dismiss must be denied because the Complaint sufficiently pleads FLSA overtime and recordkeeping violations.**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of pleadings under Rule 8(a)(2). *Andrews v. Monroe Cnty. Transit Auth.*, 523 F. App'x 889, 891 (3d Cir. 2013). Under Rule 8(a)(2), a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure

to state a claim, the complaint must contain sufficient factual matter to state a claim to relief that

is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[I]n deciding a motion

to dismiss, all well-pleaded allegations . . . must be taken as true and interpreted in the light most

favorable to the plaintiffs, and all inferences must be drawn in favor of them."  *McTernan v. City

of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quotation marks omitted).  On a Rule 12(b)(6), the

Court should not consider extraneous materials but should only consider the allegations in the

complaint, exhibits attached to the complaint, and matters of public record. *Schmidt v. Skolas*,

770 F.3d 241, 249 (3d Cir. 2014).  Plaintiff's Complaint contains sufficient allegations, when

viewed in the light most favorable to Plaintiff, to establish that Defendants' failed to properly

compensate covered employees for overtime hours worked and failed to properly record wages

due.  D.I. 1, ¶¶ 4-8.

>    1.    The Complaint alleges that employees were not paid overtime in workweeks
>          that exceeded forty hours and that Defendants' payroll record inaccurately
>          recorded wages due.

Section 7 of the FLSA forbids an employer from employing any worker "for a workweek

longer than forty hours unless such employee receives compensation ... at a rate not less than one

and one-half times the [worker's] regular rate" for the excess hours.  29 U.S.C. § 207(a)(1).  *See

Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 183 (3d Cir. 1988), cert. denied, 488 U.S.

925 (1988).  The Complaint states a claim for violation of Section 7 because it alleges that

employees worked in excess of 40 hours in a workweek and were not paid the required overtime

premium.  *See* D.I. 1, at ¶ 6 (workweeks ranged from approximately 60-80 hours with no

overtime paid).  Defendants do not dispute these facts; in fact, they have attached payroll records

that confirm hours in excess of forty for all employees and payment of all hours at straight time.

*See* D.I. 8-1. At Ex. B.  All employees for which the Secretary alleges back wages are paid their

regular rate for all hours worked.  *Id.*  By contrast, Paul DeVilbiss receives a salary and foreman

Michael Cahill receives overtime at a rate of one and a half times his regular rate.  Ex. A, at ¶¶ 4,

7.

Defendants' Motion must also be denied as to the record-keeping violations.  The

applicable FLSA recordkeeping regulations, 29 C.F.R. §§ 516.2(a)(8) and 516.2(a)(9), require

that payroll records reflect segregated earnings for both straight-time and overtime.  The

Complaint adequately pleads recordkeeping violations by alleging that Defendants failed to

make, keep, and preserve adequate and accurate records containing "total daily or weekly

straight-time earning or wages" in compliance with § 516.2(a)(8) and "employees' total premium

pay for overtime hours" in compliance with § 516.2(a)(9).  D.I. 1,

¶ 7.  Defendants misconstrue these requirements as merely requiring an accurate report of wages

that were paid.  D.I. 7-1, at 6-7.  The clear language of the regulation requires an accurate

statement of the earnings or wages due, not merely a record of what an employees was paid.  29

C.F.R. § 516.2(a)(8).  Although there may be no record-keeping violation if DeVilbiss

employees are exempt from Section 7, assuming the number of hours worked per week is

accurate, when all inferences are drawn in Plaintiff's favor, Plaintiff states a claim that DeVilbiss

failed to segregate overtime hours and failed to record the overtime premiums due to these

employees.

      2.    The complaint cannot be dismissed based on Defendants' assertion of an
            FLSA exemption.

Plaintiff's allegations of overtime work without proper overtime compensation are

sufficient to meet the requirements of Rule 8(a)(2).  "The absence of an FLSA exemption is not a

required element of Plaintiff's claim and, therefore, Plaintiff need not plead facts which would

permit a finder of fact to conclude that an exemption does not apply."  *Sloane v. Gulf Interstate*

*Field Servs., Inc.*, No. CV 15-1208, 2016 WL 878118, at *5 (W.D. Pa. Mar. 8, 2016). "Under Federal Rule of Civil Procedure 8, a complaint need not anticipate or overcome affirmative defenses . . ." *Schmidt*, 770 F.3d at 248. "On a Rule 12(b)(6) motion, an affirmative defense . . . is appropriately considered only if it presents an insuperable barrier to recovery by the plaintiff." *Flight Sys. v. Electronic Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir.1997). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (internal citation omitted).

As the Third Circuit has noted, "because the FLSA is a remedial statute, the Supreme Court has long held that exemptions from the FLSA are to be narrowly construed against the employer." *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 694 (3d Cir.1994). Defendants bear the burden of an exemption's applicability and only employees who are "plainly and unmistakably within [an exemption's] terms and spirit" will be held exempt. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). Because application of an FLSA exemption is a mixed question of law and fact, "courts routinely deny motions to dismiss when a defendant relies on an exemption." *Sloane*, 2016 WL 878118 at *5 (citing *Haskins v. VIP Wireless Consulting*, 2009 WL 4639070, at *6 (W.D. Pa. Dec. 7, 2009); *Snyder v. Dietz & Watson, Inc.*, 837 F.Supp.2d 428, 451–52 (D.N.J. 2011)).

The agricultural exemption provides that the overtime pay requirements of section 7 of the Act do not apply to "any employee employed in agriculture." 29 U.S.C. § 213(b)(12). Section 3(f) of the FLSA defines agriculture as follows:

> "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . . and any practices (including any forestry or lumbering

operations) performed by a farmer or on a farm as an incident to or in conjunction
with such farming operations, including preparation for market, delivery to
storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f).  In order to categorize an employee as exempt under Section 3(f) of the

FLSA, their work activities must be (a) performed by a farmer or on a farm, and (b) be incidental

to or in conjunction with such farming operations. 29 C.F.R. § 780.105(c); 29 C.F.R. § 780.130;

*Maneja v. Waialua Agricultural Co.*, 349 U.S. 254, 262-63 (1955); *Farmers Reservoir &*

*Irrigation Co. v. McComb*, 337 U.S. 755, 762–63 (1949).  "This definition is divided into two

parts: "primary" agriculture, which includes all activities which are actually farming, and

"secondary" agriculture, which includes activities incident to or in conjunction with the primary

farming operation of a particular farmer."  *Donovan v. Frezzo Bros., Inc.,* 678 F.2d 1166, 1171

(3rd Cir.1982) (citing *Farmers Reservoir*, 337 U.S. at 762-63, 766 n.15).

Even where employers are engaged in some primary agriculture, they cannot claim the

agricultural exemption for workers who work with the horticultural products of other growers.

*Mitchell v. Huntsville Wholesale Nurseries, Inc.*, 267 F.2d 286, 290 (5th Cir.1959).  Activities

considered secondary agriculture because they are incidental to farming include wholly

nonagricultural activities only so long as the activities support the agricultural function of the

business.  Following this logic, in *Maneja,* the Supreme Court held that employees who

processed sugar by milling were not exempt, but that the railroad workers who transported sugar

cane from the field to the processing plant were exempt.  349 U.S. at 261.  The Supreme Court

reasoned that the transportation of a farmer's crop was a necessary component to monetizing that

crop and the fact that Waialua operated such a large farm and used an "extraordinary" method of

transportation should not defeat the agricultural exemption.  *Id.*  However, the employees who

were engaged in the processing were supporting manufacturing function of their employer, not

the agricultural function and, therefore, were not exempt.  *Id.* at 265-67; *see also Mitchell v.*

*Budd*, 350 U.S. 473, 481 (1956) (processing tobacco leaves for preparation of sale was nonagricultural even where the employer grew the leaves and the same employees processed them because the processing was not in support of the agricultural purpose of the business).  The overarching theme is that secondary agriculture does not include non-exempt work that is so unrelated to the agricultural purpose of the employer that it "would be undertaken even if the actor weren't engaged in agriculture."  *Adkins v. Mid-Am. Growers, Inc.*, 167 F.3d 355, 359 (7th Cir. 1999).

Conversely, employees engaged in other work that supports the ultimate agricultural purpose of the employer have been found exempt.  *Damutz v. William Pinchbeck,* 158 F.2d 882, 883 (2d Cir. 1946) (running a furnace for heating greenhouses and sterilizing soil is incidental to agriculture); *Reich v. Tiller Helicopter Services, Inc.*, 8 F.3d 1018, 1028-29 (5th Cir. 1993) (employees engaged in aerial pesticide application were engaged in primary agriculture when applying pesticide and secondary agriculture when maintaining pesticide tanks and helicopters used in application of pesticide).

In the context of nurseries, employees can be exempt because they are engaged in primary agriculture when they are sowing seeds or otherwise propagating plants, shrubs, vines, and flowers; handling such plants from propagating frames to the field, and "planting, cultivating, watering, spraying, fertilizing, pruning, bracing, and feeding the growing crop."  29 C.F.R. § 780.205.  An employer is also entitled to an exemption when its employees are engaged in secondary agriculture, such as when they "work in packing and storage sheds sorting the stock, grading and trimming it, racking it in bins . . . *provided they handle only products grown by their employer and their activities constitute an established part of their employer's agricultural activities and are subordinate to his farming operations*."  29 C.F.R. § 780.209

11

(emphasis added). Nursery employees engage in non-exempt work when 1) they handle the products of other growers or 2) work at "an establishment for the wholesale of (sic) retail distribution of such commodities". *Id.* Employers lose the right to claim an exemption for work weeks where employees perform non-exempt work. 29 CFR § 780.11.

Defendants fail to demonstrate that their disputed claim to the agricultural exemption under § 213(b)(12) justifies dismissal at this stage of the case, especially given the remedial nature of the FLSA. *See Buckley v. Kinder*, No. 12-7069, 2013 WL 941562, at *1, n.1 (D.N.J. Mar. 6, 2013) (denying a motion to dismiss and recognizing that "under Third Circuit law, [an FLSA] exemption must be narrowly construed against the employer, [which] in itself makes it less likely that the exemptions form an insuperable barrier to recovery"). The Complaint alleges 1) that employees worked in excess of forty hours in a work week, 2) that employees routinely performed non-exempt work, and 3) that employees were not properly compensated for overtime work under Section 7 of the FLSA. D.I. 1, at ¶ 6. It also alleges details about the nonagricultural nature of the work performed and that employees typically worked 20 to 40 overtime hours worked in a typical week. *Id.* The only reasonable inferences this Court may draw from these allegations are that Defendants violated the FLSA and owe overtime premium pay to these employees. Nothing in the Complaint supports Defendants' claimed exemption; in fact, the face of the Complaint specifically alleges that the exemption is inapplicable because DeVilbiss employees routinely handle nonagricultural materials and plants and trees that are not grown by DeVilbiss. *See* D.I. 1, ¶ 6 ("These activities are not agriculture within the meaning of the Act and the agricultural exemption inapplicable."); *see Adkins*, 167 F.3d at 357 (when an employer "buys plants and then resells them without doing significant agricultural work it is operating as a wholesaler rather than as a grower, and wholesalers of agricultural commodities are not exempt

from the Act").  Therefore, the agricultural exemption is not applicable and Defendants' Motion must be denied.

The exemption's inapplicability also defeats Defendants' Motion as to the record-keeping violations.  For all non-exempt employees, DeVilbiss was required to segregate straight-time and overtime and to accurately report wages due for each type of hours worked.  29 C.F.R. §§ 516.2(a)(8), 516.2(a)(9).  The Complaint alleges, "Defendants failed to make, keep, and preserve records containing employees' total daily or weekly straight-time earnings or wages, exclusive of premium overtime compensation, and employees' total premium pay for overtime hours, excluding the straight-time earnings for overtime hours." D.I. 1, ¶ 7.  These allegations, when viewed in the light most favorable to Plaintiff, are sufficient to state a claim for relief.

Defendants Motion to Dismiss the record-keeping violations relies on the same affirmative defense; Defendants argue that their wage records are sufficiently accurate whether or not overtime was due, because they accurately reflect that no overtime premium was paid.  D.I. 7-1 at 7.  But the regulations clearly require records of "earnings or wages due" in subsection eight and subsection nine similarly refers to "premium pay" exclusive of "straight-time earnings."  29 C.F.R. §§ 516.2(a)(8), 516.2(a)(9).  Although the FLSA does not define "earnings" or "pay," the plain reading of these subsections indicates that the records should accurately reflect the amounts *due*, not merely the amounts paid.  Because the agricultural exemption is the basis of Defendants' argument that its records are sufficient, the record-keeping violation is inextricable from the substantive back wage issue.  This Court's inability to determine that the agricultural exemption applies to these employees, merely from the face of the Complaint, requires this Court to deny Defendants' Motion as to the record-keeping provisions.

**B. If this Court considers Defendants' Motion for Summary Judgment, Plaintiff must be afforded notice and an opportunity to supplement the record in opposition.**

Defendants' Motion for Summary Judgment is improperly made pursuant to Rule 12(d), rather than Rule 56. Although a court may convert a Rule 12(b) motion to a motion for summary judgment, the Third Circuit requires that the Court provide notice of this conversion to the non-moving party and afford that party the opportunity to present its own evidence. *See Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989). Here, the Court has not provided such notice and should not, therefore, consider Defendants' Motion for Summary Judgment or any materials outside the pleadings when deciding Defendants' Motion.

**C. Even if this Court considers Defendants' Motion for Summary Judgment, it must be denied because there are genuine disputes regarding DeVilbiss employees' job duties.**

Defendants claim they are entitled to summary judgment because § 213(b)(12) exempts DeVilbiss from paying its employees an overtime premium. In support of this claim, Defendants offer Paul DeVilbiss's Declaration ("DeVilbiss Declaration") which states that every plant DeVilbiss sells has been "substantially grown out" and that the "workers' efforts involve either direct cultivation of horticultural products or are in conjunction with or incident to our horticultural activities." D.I. 8-1, Ex. 1 at ¶ 4. This evidence is insufficient to demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *See id.*

14

The applicability of the agricultural exemption requires that employees be exclusively engaged in either primary or secondary agriculture. 29 C.F.R. § 213(b)(12).  As discussed *supra*, the activities performed by employees are determinative of whether or not the exemption applies. Therefore, the job duties of the DeVilbiss employees are material to the determination of these claims.

Summary judgment is inappropriate because, as discussed below, Plaintiff has sufficient evidence of two types of activity that would disallow Defendants' claimed exemption.  The DeVilbiss employees performed work unrelated to any "farming" or horticultural activity on the DeVilbiss property when they handled mulch and other hardscape materials that were offered for wholesale or retail sale.  The DeVilbiss employees also performed nonagricultural work when they cared for or handled plants and trees that were not grown by DeVilbiss.  These disputes render summary judgment inappropriate.

      1.   DeVilbiss employees are non-exempt because they handled nonagricultural for retail purposes.

When employees load and unload mulch and other hardscape materials from landscapers' trucks, they are not engaged in secondary agriculture because they are not supporting the agricultural function of DeVilbiss's business.  Instead, this work is undertaken in furtherance of DeVilbiss's landscape architecture function.  The legal conclusion set forth in the DeVilbiss declaration is insufficient evidence to support Defendants' burden on a motion for summary judgment.  *See, e.g.*, *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir.1985) ( "An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden.").  Further, Paul DeVilbiss's legal conclusion that the employees' efforts are limited to "direct cultivation of horticultural products *or are in conjunction with or incident to our*

*horticultural activities*.," D.I. 8-1, Ex. 1 at ¶ 4 (emphasis added), is directly contradicted by both Paul DeVilbiss and Foreman Michael Cahill.

Paul DeVilbiss described DeVilbiss as generating over 50% of its revenue from landscape design services and 10% of its revenue from mulch sales. Ex. A, ¶ 5. Michael Cahill also described mulch and gravel sales in a signed statement provided to Wage and Hour Investigator Luk. *Id*. at ¶ 7. In that statement he described the company as follows:

> Our customers are contractors around here to do landscape develop[ment]. We do wholesale. We sell mulch and gravel[]. We buy them from other suppliers and sell them to our customers. All the guys are able to operate the skid loaders to load them onto the customer's truck.

Ex. B. DeVilbiss employees confirm that they routinely use the skid loader to load and unload hardscape material. *Id.* at ¶ 11.

Employees involvement in this nonagricultural work is outside the agricultural exemption and Defendants' citation to *Donovan v. Marrero*, 695 F. 2d 791 (3d Cir. 1982), demonstrates a misunderstanding of *Marrero's* holding. In fact, *Marrero* actually supports a finding that DeVilbiss employees are nonexempt because they are not engaged in secondary agriculture when they load and unload hardscape materials.

In *Marrero*, an independent contractor, whose employees removed "spent" mushroom compost from mushroom farming operations, contested whether or not it was a "farm labor contractor" subject to the Farm Labor Contractor Registration Act of 1963. *Id.* at 792-3. The contractor argued that it was not required to register as a farm labor contractor because its employees were not engaged in agricultural employment. *Id.* at 793. In this context, the Court held that the employer was required to register because its employees were engaged in secondary agriculture because "removal of spent compost is 'incident to or in conjunction with' mushroom framing because the removal of spent compost is an integral step in the mushroom growing

16

process; the mushroom beds cannot be made ready for the next crop until the removal is complete." *Id.* at 795.  Restated, *Marrero* holds that when employees perform agricultural work on a farm that supports that farm's agricultural function, mere involvement of a nonagricultural product does not defeat the exemption.

However, as applied to DeVilbiss, *Marrero* dictates that the exemption does not apply because DeVilbiss employees receive mulch from another supplier and handle it for the purpose of reselling it.  This handling supports the landscape design component of DeVilbiss's business, which is decidedly nonagricultural.  Although using mulch on the DeVilbiss property to support plant growth may be secondary agriculture, the admittedly substantial portion of mulch that is wholesaled is not.  *See Donovan v. Frezzo Bros., Inc.,* 678 F.2d 1166, n.3 (3rd Cir.1982) (noting that the employer's sale of 90% of the mushroom compost it generated supported the district court's determination that such production was not secondary agriculture because it was not incidental to the employer's separate primary agriculture of mushroom cultivation).  Under this case law, Defendants' admission that 10% of its sales are comprised of mulch sales is alone sufficient to defeat the exemption.  When combined with the admission that 50% of its business is landscape design and the fact that the employees at issue routinely handle hardscape materials that are resold in connection with that business, there is substantial evidence to refute the DeVilbiss Declaration, which claims employees exclusively engage in agriculture and are covered by the agricultural exemption.

The nonagricultural nature of this work is also supported by WHI Luk's Declaration and photographic evidence.  WHI Luk observed large stacks and piles of nonagricultural materials on the DeVilbiss property.  Ex. A, ¶¶ 9-10.  Despite the substantial amount of hardscape materials on the property, WHI Luk did not observe these materials being used in the cultivation of plants

or trees on the property. The only location where any of these materials was being used, rather than merely stored, was a small area that was paved using concrete pavers for purposes of parking. *Id.* at 10.

DeVilbiss employees engaged in non-exempt work when they loaded and unloaded these materials because that activity supported DeVilbiss's wholesale landscaping business and did not support any horticultural cultivation on the DeVilbiss property. The fact that these materials may be used by the end consumer to support plant growth does not convert the DeVilbiss employees' retail handling of the products into secondary agriculture.

      2.  DeVilbiss employees are non-exempt because they handled horticultural products grown by others.

Further defeating summary judgment is an additional dispute regarding Paul DeVilbiss's factual claim that all plants are "substantially grown out" before sale. According to DeVilbiss employees, they routinely handle mature agricultural products that were not grown by DeVilbiss and that are not further grown out before sale. Employees describe routine weekly deliveries of plants that are not grown by DeVilbiss. Ex. A, ¶ 12. They contradict the DeVilbiss Declaration and state that most of the plants that DeVilbiss acquires, either through plant delivery or Foreman Cahill's trips to Home Depot or Lowe's, are sold within ten to fourteen days of DeVilbiss acquiring them. *Id.* at ¶ 14.

The quick turnaround between purchasing plants grown by others and selling them renders any care provided for these plants nonagricultural. Although employees may water, prune, or otherwise care for these plants while they are on the DeVilbiss property, "warehousing" plants for a brief period of time is not primary agriculture. *See Adkins*, 167 F.3d at 357 (holding that caring for mature plants that are bought and sold immediately was not

agriculture).  Although some plants and trees were under DeVilbiss' care for longer than two weeks, the vast majority were quickly resold.  Ex. A, ¶ 14.

The fact that most plants were not "substantially grown out" by Defendants creates, at a minimum, a factual dispute regarding the applicability of the agricultural exemption.  *See Marshall v. Mahoney*, 1977 WL 1767, *1 (D. Mass. Aug. 4, 1977) (denying the agricultural exemption where "75% of the goods and products sold at [a] nursery were originally grown, manufactured or produced by other business firms"); *Hodgson v. Wittenburg*, 464 F.2d 1219, 1222–23 (5th Cir. 1972) (holding that "handling, caring, and feeding of livestock purchased for immediate resale" is not agriculture under the FLSA).  Photographs of the property demonstrate that the vast majority of plants that are "planted" in the ground retain either burlap surrounding them or remain in plastic pots.  Ex. A, ¶ 15.  This method of storage allows for their quick removal and suggests that they are mature plants and only temporarily on the property prior to resaole.  *Id*. at ¶ 15.  Although evidence of employees handling of mulch and hardscape materials is sufficient to defeat the exemption, this evidence provides a second avenue through which DeVilbiss employees are non-exempt and requires this Court to deny Defendants' Motion.

## III.    Conclusion

Defendants' Motion must be denied because, as Plaintiff alleged in his complaint, Defendants failed to comply with federal law and properly compensate their employees for overtime hours.  Defendants' Motion to Dismiss relies solely on its argument that the agricultural exemption applies to these employees and that it did not have a legal obligation to pay them overtime.  This argument must fail because the Court may only dismiss the case if the affirmative defense applies based on the face of the Complaint.  Here, the opposite is true and the Complaint alleges facts demonstrating that the agricultural exemption does not apply.

Although Defendants' alternative Motion for Summary Judgment should not be considered at this early stage without notice to the plaintiff, if this Court does consider it, then the Motion must also be denied because there is a factual dispute regarding the application of the agricultural exemption to the DeVilbiss employees.  Defendants' own admissions are sufficient to establish that more than 10% of its total sales are generated from nonagricultural sale of mulch, which the employees participate in and further by loading the mulch onto customers' trucks.  That alone supports denial of the agricultural exemption.  Further, employees describe additional responsibilities for hardscape materials and the handling of mature horticultural products grown by others.  These combined nonagricultural activities render the exemption inapplicable.  Therefore, summary judgment must be denied because there is a genuine dispute regarding the application of this exemption.

The Motion to Dismiss and Motion for Summary Judgment must also be denied as to the record-keeping violations because these violations are based upon the obligation to pay overtime under the FLSA.  For the same reasons stated above, Defendants' affirmative defense is integral to their defense of these claims and is neither on the face of the Complaint nor supported by undisputed facts.

WHEREFORE, the Plaintiff respectfully requests that Defendant's Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Summary Judgment be denied in full.

Dated: July 10, 2017                      Respectfully submitted,


                                          Nicholas C. Geale
                                          Acting Solicitor of Labor

                                          Oscar L. Hampton III
                                          Regional Solicitor

                                          By:/s/  Elspeth L. Doskey___
                                          Elspeth L. Doskey
                                          Office of the Solicitor, Region III
                                          Suite 630E, The Curtis Center
                                          170 S. Independence Mall West
                                          Philadelphia, PA 19106-3306
                                          215-861-5149
                                          215-861-5162 (fax)
                                          Doskey.Elspeth.L@dol.gov

                                          U.S. DEPARTMENT OF
                                          LABOR

                                          Attorneys for Plaintiff